J-S59001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: R.S.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.J., FATHER | : | No. 1076 EDA 2018 |

Appeal from the Decree Entered March 13, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000978-2016,
CP-51-DP-0001922-2015, FID: 51-FN-000440-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED OCTOBER 19, 2018**

Appellant, E.J. ("Father") appeals from the decree, entered in the Philadelphia County Court of Common Pleas Family Court, which granted the petitions of the Philadelphia Department of Human Services ("DHS") for involuntary termination of Father's parental rights to R.S.C. ("Child") and to change the permanency goal to adoption.  We affirm.

The trial court opinion fully sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.[1]

_____

[1] Throughout Child's placement and during the termination proceedings, the same attorney-GAL represented Child's interests.  Because Child has been in foster care since four months after his birth, was not in Father's care before placement, and was less than three years old at the time of the termination proceedings, we can presume, absent any evidence in the record to the contrary, that there was no conflict between Child's best interests and his legal interests.  ***See In Re: T.S.***, ____ A.3d ____, 2018 WL 4001825 (filed August

Father raises these issues for our review:

> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(1)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(2)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(5)?
>
> WHETHER THE TRIAL COURT ERRED BY TERMINATING THE PARENTAL RIGHTS OF [FATHER] UNDER 23 PA.C.S.A. § 2511(A)(8)?
>
> WHETHER THE TRIAL COURT ERRED BY FINDING, UNDER 23 PA.C.S.A. § 2511(B), THAT TERMINATION OF [FATHER'S] PARENTAL RIGHTS BEST SERVES [CHILD]'S DEVELOPMENTAL, PHYSICAL AND EMOTIONAL NEEDS AND WELFARE?

(Father's Brief at 5).[2]

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the

_____

22, 2018) (holding appointment of second counsel for children, in contested termination proceedings, is not required to represent separate legal interests of children, where children's legal interests and best interests do not diverge; due to their young age (less than three years old), presumption exists that children were too young to express subjective preferred outcome of termination proceedings; therefore attorney-GAL could fulfill statutory mandate for appointment of counsel and represent both best interests and legal interests of children).

[2] Father did not challenge the goal change order on appeal.

order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*)*, appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165

(2008)).

DHS filed a petition for the involuntary termination of Father's parental rights to Child on the following grounds:

### § 2511. Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*     \*     \*

(8)  The child has been removed from the care of the

parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have his… rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of

- 5 -

a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his…physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

Importantly, neither Section 2511(a) nor Section 2511(b) requires the court to consider, at the termination stage, whether an agency made

reasonable efforts to reunify the parent with his child before the agency petitioned for termination of the parent's parental rights. *In re D.C.D.*, 629 Pa. 325, 342, 105 A.3d 662, 672 (2014). Nothing in the statute prohibits the court from granting a petition to terminate parental rights under Section 2511, even if the agency failed to make reasonable efforts at reunification. *Id.* at 346, 105 A.3d at 675.

After a thorough review of the record, the brief of the parties, the applicable law, and the comprehensive opinion of the Honorable Allan L. Tereshko, Sr. J., we conclude Father's issues merit no relief. The court's opinion fully discusses and properly disposes of the questions presented. (*See* Family Court Opinion, filed May 10, 2018, at 2-25) (finding: **(1-4)** court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (a)(2), and limits discussion of Section 2511(a) to those sections; clear and convincing evidence showed Father failed and refused to perform parental duties, failed to address conditions that brought Child into placement, and lacks capacity to provide adequate care, control, and stable environment necessary for Child; Child was four months old when he came into DHS' care in July 2015, after Mother was arrested, leaving Child in the care of his fourteen-year old sibling; Mother's parental rights were terminated on June 28, 2017; Father failed to meet, or provide documentation that he had met, his Single Case Plan ("SCP") objectives to participate in mental health therapy, participate in domestic violence counseling, obtain employment, secure

housing appropriate for Child, and participate in programming to encourage sobriety and to maintain sobriety; credible testimony revealed Child cried during visits with Father and clung to caregiver when Father attempted to hold Child; after visits with Father, Child regressed and displayed disruptive behavior at foster home; Child's behavior improved after Father's visitation ceased in December 2017; Parenting Capacity Evaluation ("PCE"), dated May 9, 2017, indicated Father failed to present with capacity to provide permanency and safety to Child; PCE identified serious concerns, including inappropriate housing, non-compliance with mental health treatment and domestic violence classes, failure to make himself available to Community Umbrella Agency−Turning Points for Children ("CUA−TP4C"), and his history of substance abuse; record demonstrates Father cannot or will not remedy conditions which brought Child under supervision and will be unable to fulfill parental responsibilities for Child in reasonable future; Father is not in position to care for Child or provide for Child's present and future need for essential parental care and control necessary for Child's well-being; further, court found DHS testimony credible and Father's testimony incredible; Father is unable and unwilling to parent Child; court found clear and convincing evidence to satisfy 23 Pa.C.S.A. § 2511(a)(1) and (a)(2); **(5)** regarding Section 2511(b), adoption will best serve Child's interests, given serious concerns over Father's unstable living situation and Father's effect on Child's behavior during visits; Child is thriving in care of foster parent; Child is not bonded to Father but is

bonded to foster parent; Child would not suffer irreparable harm if Father's parental rights were terminated; Child has been in foster care for thirty-two months, and adoption will serve Child's best interests and need for permanency). The record supports the court's termination decision under Section 2511(a)(1), (a)(2) and (b), based on parental incapacity and the best interests of Child. *See In re Z.P., supra*. Therefore, we have no need to disturb it. Based upon the foregoing, we affirm the decree terminating Father's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/18

## THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
## IN THE COURT OF COMMON PLEAS

IN THE INTEREST OF:     : **FAMILY COURT DIVISION**
                            : **JUVENILE BRANCH-DEPENDENCY**
                            :

**R.S.C., a Minor**            : **CP-51-AP-0000978-2016/CP-51-DP-0001922-2015**
                            :

**APPEAL OF:**              :
**E.J., Father**             : **Superior Court No. 1076 EDA 2018**

## OPINION

E.J., ("Father"), appeals from the Decree and Order entered by this Court on March 13, 2018, granting the Petition to Involuntarily Terminate his Parental Rights and Change the Permanency Goal to Adoption of his Child: ("R.S.C.").  born March 2015, filed by the Department of Human Services ("DHS"), on February 26, 2018 and served on all parties. This Court Involuntarily Terminated the Parental Rights of Mother, T.T.C. at hearing held June 28, 2017. Mother did not appeal.

In response to the Decree of Involuntary Termination of Parental Rights issued on March 13, 2018, Father filed a *Notice of Appeal with Statement of Matters Complained of Upon Appeal* on April 10, 2018.

### STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Concise Statement of Matters Complained of on Appeal Pursuant to PA.R.A.P. 1925(b), Father alleges:

> 1. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds that Father has

1

evidenced a settled purpose of relinquishing claim to a Child or has refused or failed to perform parental duties under 23 Pa.C.S.A. §2511 (a)(1).

2. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of establishing sufficient grounds under 23 Pa.C.S.A. §2511 (a)(2) that Father lacks the present capacity to perform his parental responsibilities.

3. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (a)(5) because the Department of Human Services failed to prove by clear and convincing evidence the present and continued incapacity of Father to provide essential care necessary for Child's physical and mental wellbeing.

4. The Trial Court did abuse its discretion and commit legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (a)(8) because the Department of Human Services failed to prove by clear and convincing evidence that the conditions which led to Child's placement continue to exist.

5. The Trial Court did err in terminating Father's parental rights since the Department of Human Services did not meet its burden by clear and convincing evidence of showing that the best interest of the Child was served by terminating Father's parental rights pursuant to 23 Pa.C.S.A. §2511 (b) of the Adoption Act.

6. The Trial Court abused its discretion and committed legal error in terminating Father's parental rights under 23 Pa.C.S.A. §2511 (b) because the Department of Human Services did not present competent evidence regarding the nature of the bond between parent and Child in order to assess the best interest of the Child.

## PROCEDURAL HISTORY:

E.J., is the "Father" of R.S.C. (Exhibit "B", Certificate of Birth, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018).

On July 9, 2015, R.S.C.'s Mother, T.C., was arrested and charged with simple assault and recklessly endangering another person (REAP). The complainant in the

criminal matter was identified as R.S.C.'s Father, E.J. Mother was subsequently incarcerated at Riverside Correctional Facility (RCF). (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "a").

On July 11, 2015, DHS visited Mother's residence and met with R.S.C.'s older sibling, A. , who confirmed that Mother had been arrested and that she had been caring for the Child. A. stated to DHS that she had been residing with Mother over the summer while school was not in session. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "b").

On July 11, 2015, . A. 's father, G.G., retrieved her from DHS. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "c").

On July 11, 2015, DHS obtained an Order of Protective Custody (OPC) for the Child and placed him in a foster care home through Community Umbrella Agency (CUA)-Turning Points for Children (TP4C). (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "d").

A Shelter Care Hearing was held on July 14, 2015, before the Juvenile Court Hearing Officer, William T. Rice. The OPC was lifted. Legal Custody of the Child, R.S.C, was transferred to DHS, and placement in Foster Care through Turning Points. DHS to explore any possible family members for placement and/or visitation. Mother is incarcerated at Riverside, and DHS to explore visitation between Mother and Child. (Shelter Care Order, 7/14/2015).

3

E.J., the Child's Father, was not involved in his care. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "f").

An Adjudicatory Hearing was held on July 23, 2015, before the Juvenile Court Hearing Officer, William T. Rice. Child Adjudicated Dependent. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care. Liberal supervised visitation with Father shall occur as arranged by the parties. DHS/CUA to explore Father and family members as possible placement resources. Mother is incarcerated at Riverside, and DHS to explore visitation between Mother and Child. DHS/CUA to explore sibling visitation. Child safe as of 7/13/2015. (Shelter Care Order, 7/23/2015).

On August 10, 2015, Mother's criminal matter was tried and she was found "not guilty." (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "h").

A Permanency Review Hearing was held on October 15, 2015, before the Juvenile Court Hearing Officer, William T. Rice. Child Adjudicated Dependent. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care through New Foundations. Child is doing well in the home, and is not receiving services. Mother and Father were referred to ARC. Mother and Father are referred to CEU for dual monitoring and 3 randoms prior to the next court date. (Permanency Review Order, 10/15/2015).

A Permanency Review Hearing was held on April 15, 2016, before the Juvenile Court Hearing Officer, Carol A. Carson. Legal Custody of the Child, R.S.C., remains

4

with DHS, and placement continues in Foster Care through New Foundations. Father to have twice weekly 4-hour unsupervised visits with the Child in the community. The child is medically up-to-date, and next medical appointment is 7/17/2016. The Child suffers from eczema, and a referral was made on 3/01/2016, to Ages and Stages. Parents are referred to CEU for monitoring. Father is to continue to participate in ARC. Child is safe as of 4/12/2016. (Permanency Review Order, 4/15/2016).

A Permanency Review Hearing was held on July 11, 2016, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care through New Foundations. Mother is not to attend Father's visits with Child. Father and Child to have unsupervised visits with every other visit at the Agency. Child is doing well, and medically up-to-date. Child does not receive services. The last SCP Meeting was held on 6/15/2016. Father is currently employed and is in the process of obtaining housing. Father is engaged with ARC, and has not obtained domestic violence therapy. Parents are referred for Parenting Capacity Evaluations. Father to provide information on mental health attendance and facility. CUA home visits are suspended until further order of the Court. Child is safe as of 7/07/2016. (Permanency Review Order, 7/11/2016).

A Permanency Review Hearing was held on November 3, 2016, before the Honorable Richard J. Gordon. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care. Parents are to complete part 2 of the PCE's. Parents are referred to CEU for monitoring. Father to continue drug and alcohol treatment at the WEDGE. Parents to have supervised line-of-sight visits at the Agency for 2 hours, which may be modified by agreement of the parties before next court date.

Father to sign releases. Father to provide information on mental health attendance and facility. CUA home visits are suspended until further order of court. Child is safe as of 10/26/2016. (Permanency Review Order, 11/03/2016).

On January 3, 2017, CUA-TP4C held a SCP Meeting. The parental objectives established for Father were to: 1) to complete part 2 of PCE; 2) attend CEU monitoring; 3) continue drug and alcohol treatment at the WEDGE; 4) continue 2 hour line-of-sight supervised visits with Child at Agency; 5) to sign release of information forms; to provide information as to his mental health therapy and attendance. The Court suspended home visits until further order of Court. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "m").

A Permanency Review Hearing was held on March 1, 2017, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care through New Foundations. Father to have supervised visitation with Child at the Agency. CUA to provide Father's address to ACS and Father's attorney. Parents are to complete part 2 of the PCE's. Father referred to CEU for monitoring and forthwith drug screen. Child is safe as of 2/27/2017. (Permanency Review Order, 3/01/2017).

On March 2, 2017, CUA-TP4C held a SCP Meeting. The parental objectives established for Father were to: 1) participate and complete drug and alcohol treatment program and follow all recommendations; 2) to participate in mental health therapy and follow all recommendations; 3) participate in PCE; 4) provide CUA-TP4C with letter from therapist documenting if he needs therapy or not; 5) participate in court ordered visitation; 6) participate in domestic violence counseling; 7) obtain employment to meet

personal financial needs; 8) provide employment documentation to CUA-TP4C; 9) participate in psychotherapy for Child; and 10) obtain safe and appropriate housing with adequate space and operable utilities. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "o").

On May 9, 2017, Father completed Part 2 of his PCE. The PCE stated that at the time, Father failed to present with the capacity to provide permanency and safety to the Child. The PCE identified concerns, including, inappropriate housing, non-compliance with mental health treatment, non-compliance with domestic violence classes, failure to make himself available to CUA-TP4C, as well as his history of substance abuse. The PCE noted that Father did present with multiple strengths that could be built upon to help him achieve this capacity. The PCE determined that a re-evaluation be recommended if at such a time Father completed its recommendations. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "p").

On May 24, 2017, CUA-TP4C held a SCP Meeting. The parental objectives established for Father were to: 1) attend and complete parenting classes; 2) participate and complete drug and alcohol treatment program and follow all recommendations; 3) participate in a CEU assessment and follow recommendations; 4) maintain court ordered visitation; 5) maintain appropriate housing with adequate space and operable utilities; 6) sign all consents and releases; 7) cooperate with CUA-TP4C services; and 8) comply with stay-away order. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "q").

7

A Permanency Review Hearing was held on June 14, 2017, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care. The Court Orders Mother's visits suspended until further order of the Court. All previous court orders to stand. Status Quo. (Permanency Review Order, 6/14/2017).

On June 28, 2017, a termination of parental rights hearing was held, and the Court involuntarily terminated the parental rights of Mother, T.T.C. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "r").

A Permanency Review Hearing was held on June 28, 2017, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Foster Care through New Foundations. Visitation with Father shall be supervised for 8 hours on a weekly basis, and CUA to facilitate visits. Court denies the goal change as to Father, and he is re-referred to BHS for consultations and/or evaluations and monitoring. (Permanency Review Order, 7/28/2017).

A Permanency Review Hearing was held on September 14, 2017, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in pre-adoptive home through New Foundations. Visitation with Father shall be unsupervised twice weekly in the community for 3 hours each visit. (Permanency Review Order, 9/14/2017).

On November 7, 2017, CUA-TP4C held a SCP Meeting. The parental objectives established for Father were to: 1) follow the recommendations of the Wedge Medical Center and check-in to maintain sobriety; 2) participate in mental health treatment and

8

follow all treatment recommendations; 3) participate in Parenting Capacity Evaluation (PCE); 4) provide CUA-TP4C with letter from therapist documenting if he needs therapy or not; 5) participate in court ordered visitation; 6) Participate in domestic violence counseling; 7) obtain employment to meet personal financial needs; 8) Provide employment documentation to CUA-TP4C; 9) obtain safe and appropriate housing with adequate space and operable utilities; 10) Provide CUA-TP4C with his address and documentation of employment. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 2/26/2018, ¶ "u").

A Status Review Hearing was held on December 14, 2017, before the Juvenile Court Hearing Officer Carol A. Carson. Continuance requested to hear before Judge. Status Quo. (Status Review Order, 12/14/2017).

A Permanency Review Hearing was held on December 28, 2017, before the Honorable Allan L. Tereshko. Legal Custody of the Child, R.S.C., remains with DHS, and placement continues in Pre-Adoptive home through New Foundations. Father's visitation with Child is suspended. Child safe as of 12/12/2017. (Permanency Review Order, 12/28/2017).

## TERMINATION HEARINGS

On March 13, 2018, this Court held the initial Contested Termination of Parental Rights and Goal Change Hearing. Elizabeth Blass, Esquire, counsel for DHS presented the first witness, Patrice Garvey, CUA Supervisor, Turning Points for Children. Ms. Garvey testified the Child, who was 4 months old at the time, came into DHS care in July 2015 when he was removed from the care of his 14 year old sibling, A. . Mother had

9

been arrested and the Children were alone in the home. She also noted that on June 28, 2017, the parental rights of Mother, T.C.C., were terminated by the Court and Father was given an opportunity to build a relationship with his son. (N.T., 3/13/2018, p.5 at 1-25; p.6 at 1-6).

On 8/08/2017, a Single Case Plan (SCP) Meeting was held, which incorporated the recommendations made on Father's Parent Capacity Evaluation. Father was ordered to participate in mental health therapy, and he enrolled at The Wedge. She noted that Father attended only two sessions and did not provide her with any documentation of his participation in therapy since November of 2017. (N.T., 3/13/2018, p.6 at 10-25; p.71-25; p.8 at 1-18).

Ms. Garvey further testified that another objective in the SCP was for Father to participate in domestic violence counseling, and Father has failed to participate, nor has he provided any documentation of this type of therapy. Another objective for Father was for him to obtain employment. Father had previously been employed at a dental office, however, in November 2017, he told her he did not work there anymore. She referred Father to ARC for job training, where Father did attend and complete the initial program but Father refused to attend subsequent programs. Later, Father told her he was working as a Certified Nurse Assistant (CNA), however, he never provided documentation, such as pay stubs. She further stated, Father told her he was making money by selling cigarettes. (N.T., 3/13/2018, p.9 at 3-25; p.10 at 1-25; p.11 at 1-25; p.12 at 1-25; p.13 at 1-17).

Ms. Garvey stated another objective was for Father to obtain suitable housing, and

Father reported to her he resides with his girlfriend at 2110 Garnet Street. He noted that his girlfriend has five children and this house lacked space and was not appropriate for his son. She referred Father to Royal Management for financial assistance in finding housing. He never provided confirmation that he followed up with that referral, and stated Father decided he wants to wait for the PHA housing program. (N.T., 3/13/2018, p.13 at 18-25; p.14 at 1-25; p.15 at 1-25).

Regarding visitation, Ms. Garvey testified that visitation was suspended in December 2017. Prior to that, Father had been given court ordered visitation one day per week, which was then increased to two days per week. Between June 2017, and December 2017, Father missed about 5 of approximately 18 visits. In December 2017, Ms. Garvey testified she was very concerned because the Child was crying a lot during visits and not bonding with Father. Father began taking pictures of the Child's genitals and made allegations that his Child was being molested by the caregiver because the person was gay. DHS investigated the allegations by Father, and did not have any concerns regarding possible abuse by the caregiver. She noted that the Child would cry and hang onto the caregiver when Father attempted to hold him. After the visits with Father, the Child would have disruptive behaviors at the Foster Home, including biting, hitting and night terrors. Since the visitation with Father ceased in December 2017, she has observed the Child and noted that his behavior has changed. He is friendly, she hugged him and held him on her lap. He showed her his toys, his clothes and room. The Child's behavior with the other Children in the Foster Home has also improved. (N.T., 3/13/2018, p.16 at 1-25; p.17 at 1-21; p.18 at 1-25; p.19 at 1-25; p.20 at 1-25; p.21 at 1-25; p.22 at 1-13).

11

Ms. Garvey testified another objective for Father was to attend The Wedge for aftercare for sobriety, and check in periodically to maintain his sobriety. Father has not provided any documentation to prove he has complied with this recommendation. (N.T., 3/13/2018, p.22 at 14-25; p.23 at 1).

Ms. Garvey stated that on February 12, 2018, Father contacted her and stated he could not provide housing for the Child, however, his sister would be willing to step up and apply for Kinship for the Child. She noted that the Child has been in this placement almost 3 years and she would not disrupt the Child at this point. However, she informed Father that she would email all parties and give them that information regarding possible Kinship for paternal aunt. Ms. Garvey testified she recommended to the Court that the Child continue to remain in the current placement. (N.T., 3/13/2018, p.24 at 5-25; p.25 at 1; p.25 at 1-5).

Ms. Garvey opined that the Child is not bonded to Father. The Child is bonded to his Caregiver and refers to him as "Daddy." The Child is happy and runs to his Foster Parent whenever he sees him. The Child looks to his Foster Parent for physical and emotional needs, safety and his daily needs. She further opined that the Child would not suffer irreparable harm if Father's parental rights were terminated, and it would be in the Child's best interest to be adopted. (N.T., 3/13/2018, p.25 at 15-25; p.26 at 1-25; p.27 at 1-25; p.28 at 1-22).

Sherrell Dawkins, CUA Permanency Specialist at Turning Points for Children, was the next person to testify. She noted she spoke to Father on 2/2/2018, and Father stated he was employed as a home health aide in a 56 hour work week. Father did not

12

provide documentation of his job to her nor to Ms. Garvey. (N.T., 3/13/2018; p.36 at 13-25; p.37 at 1-15).

E.J., Father, was the last witness to testify. He stated he observed that his Child's genitals were swollen and that is why he brought it to the attention of the Agency. He stated he has attended mental health therapy at The Wedge in South Philadelphia, and that he completed the therapy. Father noted he is not receiving drug and alcohol treatment and has been sober for almost 3 years. Father testified he is a home health aide. Father also stated he is saving money to buy a house. Father stated his family, specifically his sister, is now willing to help care for his son. He lastly stated his son is bonded to him and he wants to provide for his Child. (N.T., 3/13/2018, p.40 at 5-25; p. 41at 1-25; p.42 at 1-25; p.43 at 1-25; p.44 at 1-25; p.45 at 1-25; p.46 at 1-25; p.47 at 1-20).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an appeal from a decree terminating parental rights, an appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T. 91 A.3d 197 Pa.Super.2014).*

13

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted) In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. As the party petitioning for termination of parental rights, DHS "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 555 A.2d 1202, 1203-04 (Pa.1989).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the

14

second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

This Child came to the attention of DHS on July 9, 2015, when R.S.C.'s Mother, T.C., was arrested and charged with simple assault and recklessly endangering another person (REAP). The complainant in the criminal matter was identified as E.J., R.S.C.'s Father. Mother was subsequently incarcerated at Riverside Correctional Facility (RCF). On July 11, 2015, DHS visited Mother's residence and met with R.S.C.'s 14 year old sibling, A., who confirmed that Mother had been arrested and that she had been caring for the Child. On July 11, 2015, DHS obtained an Order of Protective Custody (OPC) for the Child and placed him in a Foster Care Home through Community Umbrella Agency (CUA)-Turning Points for Children (TP4C). Mother's parental rights were terminated by this Court on June 28, 2017, and Mother did not appeal. The Child is 3 years old and currently remains in placement through Turning Points for Children.

15

## The Trial Court Properly Found that DHS had met its Burden by Clear and Convincing Evidence to Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2) [1]

The focus of termination proceedings is on the conduct of the parent. To satisfy 23 Pa.C.S.A. §2511 (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months period prior to the filing of the petition, which reveals a settled purpose of relinquishing parental claim to a child or a failure to perform parental duties. *In Re: C.S., 761 A.2d 1197, 1201 (Pa.Super.2000).* 23 Pa.C.S.A. §2511 (a)(2) focuses on the Child and his/her present and future need for essential parental care, control or subsistence necessary for his/her physical or mental well-being. *In Re: C.A.W., 683 A.2d 911 (Pa.Super, 1996)*

In his *Concise Statement of Matters Complained of on Appeal*, Father alleges the court erred when it involuntarily terminated his parental rights because DHS had not met

---

[1] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

its burden by clear and convincing evidence pursuant to 23 Pa.C.S.A. §2511 (a)(1), (a)(2), (a)(5), and (a)(8). This Court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §2511 (a) (1) and (2) only, and therefore, will only address those sections in this opinion.

This Court found clear and convincing evidence that Father failed and refused to perform parental duties, failed to address the conditions which brought the Child into placement, and lacks the capacity to adequately provide care and control and a stable environment necessary for this three year old Child.

This Court relied on the credible testimony of Patrice Garvey, CUA Supervisor, Turning Points for Children. Ms. Garvey testified the Child, who was 4 months old at the time, came into DHS care in July 2015 when he was removed from the care of his 14 year old sibling, A. Mother had been arrested and the Children were alone in the home. She also noted that on June 28, 2017, Mother, T.T.C., parental rights were terminated by the Court and Father's rights were not terminated and the Court decided to give Father an opportunity to build a relationship with his son.

Ms. Garvey testified credibly and convincingly regarding the Single Case Plan (SCP) objectives, which incorporated the recommendations made on Father's Parent Capacity Evaluation, which was completed on 5/09/2017. Father was ordered to participate in mental health therapy, and he enrolled at The Wedge. She noted that Father attended only two sessions and did not provide her with any documentation of his participation in therapy since November of 2017. She further testified that another objective in the SCP was for Father to participate in domestic violence counseling, and he has failed to participate, nor has he provided any documentation of this type of therapy.

17

Another objective for Father was for him to obtain employment. Father had previously been employed at a dental office, however, in November 2017, he told her he did not work there anymore. She referred Father to ARC for job training, where Father did attend and complete the initial program but Father refused to attend subsequent programs. Later, Father told her he was working as a Certified Nurse Assistant (CNA), however, he never provided documentation, such as pay stubs. She further stated, Father told her he was making money by selling cigarettes.

Ms. Garvey testified that another objective was for Father to obtain suitable housing, and Father reported to her he resided with his girlfriend at 2110 Garnet Street. He noted that his girlfriend has five children and this house lacked space and was not appropriate for his son. She referred Father to Royal Management for financial assistance in finding housing. He never provided confirmation that he followed up with that referral, and stated Father decided he wants to wait for the PHA housing program.

Regarding visitation, Ms. Garvey testified that visitation was suspended in December 2017. Prior to that, Father had been given court ordered visitation one day per week, which was then increased to two days per week. Between June 2017 and December 2017, Father missed about 5 of approximately 18 visits. In December 2017, Ms. Garvey testified she was very concerned because the Child was crying a lot during visits and not bonding with Father. Father began taking pictures of the Child's genitals and made allegations that his Child was being molested by the caregiver because the person was gay. DHS investigated the allegations by Father, and did not have any concerns regarding possible abuse by the caregiver. She noted that the Child would cry and hang onto the caregiver when Father attempted to hold him. After the visits with

18

Father, the Child would have disruptive behaviors at the Foster Home, including biting, hitting and night terrors. Since the visitation with Father ceased in December 2017, she has observed the Child and noted that his behavior has changed. He is friendly, hugged her and she held him on her lap. He showed her his toys, his clothes and room. The Child's behavior with the other Children in the Foster Home has also improved. Lastly, Ms. Garvey testified another objective for Father was to attend The Wedge for aftercare for sobriety, and check in periodically to maintain his sobriety. Father has not provided any documentation to prove he has complied with this recommendation. She opined that the Child was not bonded to Father and was bonded to his Foster Care Parent, who the Child seeks for all of his needs, for safety and permanency.

This Court relied on credible, clear and convincing evidence from Ms. Garvey regarding Father's failure to perform parental duties, and inability to remedy the conditions which led to the Child's removal and placement. The Court also relied on the Parenting Capacity Evaluation dated 5/09/2017, which stated that Father failed to present with the capacity to provide permanency and safety to the Child. The concerns that the PCE identified, including, inappropriate housing, non-compliance with mental health treatment, non-compliance with domestic violence classes, failure to make himself available to CUA-TP4C, as well as his history of substance abuse, have not been addressed by Father.

This Court is not persuaded that Father can or will remedy the conditions which brought the Child into court supervision. Nor is the Court persuaded that Father will be able to fulfill his parental responsibilities for this Child in the future. The reality is Father is not in a position to take care of this Child. He is not in a position to provide for the

Child's present and future need for essential parental care, and control that is necessary for this Child's physical and mental well-being. Based on the evidence presented, this Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a) (1) and (2).

### Trial Court Properly Found that Termination of Father's Parental Rights was in the Child's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[2]

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court "shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d 251 (Pa. 2013).

Father alleges in his Concise Statement of the Matters Complained of on Appeal that this Court abused its discretion and committed legal error in terminating Father's parental rights because DHS did not present competent evidence regarding the nature of

---

[2] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

the bond between Father and the Child in order to assess the best interest of the Child. This Court disagrees with Father's allegation.

This Court found the Case Manager, Ms. Garvey, provided credible, persuasive testimony regarding the Child's physical and emotional needs and best interests. She opined that it would be in the Child's best interest to be adopted because she had concerns regarding Father's unstable living situation and Father's effect on the Child's behavior and demeanor during visits. She noted that when visits with Father were suspended, the Child was happier and had less behavioral issues. The Child is thriving in the care of the Foster Parent. He is not bonded to Father, and in fact, the Child is bonded to his Foster Parent. She opined the Child would not suffer irreparable harm if Father's parental rights were terminated. The Child has been in care for thirty-two months, and it is in his best interest to obtain permanency through adoption. Therefore, this Court found that credible, clear and convincing testimony was provided that the Child would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights and adoption would be in the Child's best interest.

This Court also finds Father's testimony not credible in many aspects. Father testified he completed all of the SCP objectives, however, did not offer proof. He testified that although he does not have a home for the Child, he wants the Court to assign his parental duties to his sister, who has never presented herself to this Court. This Court finds that Father is not ready, willing nor able to parent this Child, and finds his testimony not credible.

21

## CONCLUSION

At the conclusion of the Hearing, the Court stated:

> I go back to the June hearing, in which I terminated the Mother's parental rights, and I did not terminate Father's parental rights because I believed, at that time, that Father made an impassioned plea that he was ready, willing and able to cure all the defects that then existed, and wanted an opportunity to cure all those defects.
>
> And the Court was moved by the plea, and decided at that time not to terminate his rights. But let's review what has been done in the interim.
>
> And with respect to improving the Father's parental relationship with the Child and to putting himself in a position to parent this Child, his ability to cure any of those issues and his, in fact, accomplishments in curing those issues are almost non-existent.
>
> Father talks a great game, but when it comes down to substantiating the facts as to compliance and as to resolving and remediating any of the issues that brought the child into care, he's done almost nothing.
>
> He comes into court and makes the bold assertions that, although he doesn't have a home for the child and could not be in a position now to parent this child or be ready, willing and able to parent this child, he wants to assume the role of Family Court Judge and assign the child to his relatives.
>
> The very proposition that he's not able to care for this child, now, yet wants someone else to care for the child, suggested he does not have the ability to parent this child, nor does have a parental relationship, nor is he really willing to do the things that are necessary to establish a parental relationship.
>
> The issue that he presents to the Court is, "I can't really care for the child myself, but I want my sister to care for the child." And let's look at that proposition. I don't think

22

the Court has ever met his sister. I don't think the sister has ever entered this courtroom before and asked to be considered as a foster care placement. I looked at all my notes in this case, since I had it from the beginning, and I see nothing about another caretaker entering the picture.

But the critical issue here is that Father not being able to substantiate all of the things that he's—he thinks he did, because it hasn't even been expressly stated that he has accomplished and remediated all the issues. He thinks he remediated all the issues. The two documents that he attempted to enter into evidence are not admissible because they're not self-authenticating.

Despite the fact that he knew all of these outstanding goals and issues to be accomplished, he walks in with no evidence, and walks in with just a promise that someday he's going to get himself together and get his game together, and maybe then he'll be able to parent this child.

Fortunately, the law is different, and the Supreme Court has enunciated a very articulate test for this type of situation, and it simply is that, notwithstanding the profession of the Father's love or affection for the child, it's not about the father, it's about the child. And a child cannot simply be put on hold to wait for the father to tighten up his end game, and in the hope that maybe someday he'll think about parenting this child and be serious about trying to resolve the impediments to returning this child to his care.

That has not been done, despite the fact that the child is now in care for over 33 months. And, throughout that whole period of time, the child has been in the care of the foster family with whom this child was placed at the beginning of this case.

What is lacking here is the connection between the child and the Father, and the connection does not exist because Father has done nothing to become a parent to this child. He says he's been saving money in the hopes of one day getting his own residence, yet all during this period of time, the child has been in care and subsidized by taxpayers. I heard no evidence that Father contributed one penny, out of all the thousands that he saved, to the welfare of the child.

23

But putting aside the monetary and the financial aspects of it, what's most important is the human aspects of it, and that is that the child has a relationship with its foster family. That relationship is one of parent and child. The Father does not have a relationship with the child. There is no parental relationship. The child refuses to recognize ~~E.J.~~ as his parent. In fact, any contact with ~~E.J.~~ traumatizes this child to the effect that, at the hearing in December, I suspended Father's visitation. All of the goals he says he's accomplished—no proof. His testimony is not credible.

When I'm balancing the credibility of the witnesses, I find that the case worker who has been, up until recently, the long-term and only case worker on the case, to be more credible, more believable, in all of the testimony on any of the issues that are contested by Father. The child was not in Father's care when the child was brought into custody and care, so that I don't have to address the issues of 2511(a)(5) and (8), but I focus on 2511(a)(1) and (2), and find that, based upon those sections, Father has failed to remedy the issues that brought the child into care, will not be in a position to remedy those issues going forward.

Now, with respect to the issue of irreparable harm if the Father's rights were terminated, the Court finds that there is no parental relationship between Father and Child, such that there would be no harm in terminating something that doesn't exist. And, viewing it from the other side of the lens, the evidence clearly supports a finding that there is a bond between the Child and his foster care parents, and that severing or changing that relationship would be against the best interest of the Child.

In review, Father's rights are terminated based upon 2511(a)(1) and (2) and 2511(b). Having previously terminated the Mother's parental rights, we are now in a position to move and change the goal to adoption for R.S.C.

(N.T, 3/13/2018, p. 60 at 2-25; p. 61 at 1-25; p.62 at 1-25; p.63 at 1-25; p.64 at 1-25; p.65 at 1-25; p.66 at 1-5).

24

For the foregoing reasons, this Court respectfully requests that the Decree and Order of March 13, 2018, terminating Father, E.J.'s Parental Rights to the Child, R.S.C., and Changing the Permanency Goal to Adoption, be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

_May 10th, 2018_
DATE

25

## CERTIFCATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing OPINION has been served upon the following parties by the manner as designated:

**Family Court Delivery Mail Box**

Daniel Silver, Esquire
1845 Walnut Street, Ste. 1199
Philadelphia, PA 19103
Counsel for Appellant, Father, E.J.

Lue B. Frierson, Esquire
2333 St. Albans Pl.
Philadelphia, PA 19146
Counsel for Child, R.S.C.

Elizabeth Holbrook Blass, Esq., ACS
City of Phila Law Dept.
1515 Arch Street, 16th floor
Philadelphia, PA 19102
Counsel for DHS

Andre Martino, Esq.
7435 Sprague Street
Philadelphia, PA 19119
Guardian Ad Litem for Child, R.S.C.

Shanese Ivette Johnson, Esq.
230 S. Broad St., Ste. 1501
Philadelphia, PA 19102
Counsel for Mother, T.T.

ALLAN L. TERESHKO, Sr. J.

5-10-2018
DATE